# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **LIBERTY MUTUAL FIRE INSURANCE COMPANY, ET AL.,** | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:16CV00036 |
| v. | ) ) | **OPINION AND ORDER** |
| **BIZZACK CONSTRUCTION, LLC, ET AL.,** | ) ) ) | By: James P. Jones United States District Judge |
| Defendants. | ) ) | |

*E. Ford Stephens, Christian & Barton LLP, Richmond, Virginia, and Douglas W. Langdon and J. Kendrick Wells, IV, Frost Brown Todd LLC, Louisville, Kentucky, for Plaintiffs and Counter-Defendants; Guy M. Harbert, III, and Daniel R. Sullivan, Gentry, Locke, Rakes & Moore LLP, Roanoke, Virginia, for Defendants and Counterclaimants Bizzack Construction, LLC, Bizzack, Inc., and Brett Cool.*

In this diversity action seeking interpretation of the terms of commercial liability insurance policies, Liberty Mutual Fire Insurance Company and Liberty Insurance Corporation (collectively, "Liberty Mutual") seek a declaration that they have neither a duty to defend nor a duty to indemnify Bizzack Construction, LLC, Bizzack, Inc., and Brett Cool (collectively, "Bizzack") in lawsuits seeking damages resulting from certain highway construction. Bizzack, in turn, seeks a declaration that Liberty Mutual does have a duty to defend and indemnify Bizzack in the underlying actions.

The parties have filed cross-motions for summary judgment. I conclude, applying Kentucky law, that Bizzack's Motion for Partial Summary Judgment solely related to the duty to defend must be granted and that Liberty Mutual's Motion for Summary Judgment must be denied.

## I. FACTUAL SUMMARY AND PROCEDURAL HISTORY.

The basic facts, taken from Liberty Mutual's Complaint, Bizzack's Counterclaim, and the summary judgment record, are as follows.

Sometime prior to November 2012, the Virginia Department of Transportation ("VDOT") contracted with Bizzack to perform work in connection with a road-widening project on U.S. Route 460 in Grundy, Virginia (the "460 Bypass Project"). In November 2012, VDOT began notifying coal owners that it had been "necessary to remove certain coal" from their land "[d]uring the construction of Route 460." Black Letter 14, Ex. C, ECF No. 1-4. Certain of these coal owners thereafter filed four separate civil actions against Bizzack in the Circuit Court of Buchanan County, Virginia, seeking compensation for lost coal. Bizzack removed all four actions to this court. I remanded three of the actions seeking damages to the state court, *Town of Grundy Indus. Dev. Auth. v. Bizzack Constr., LLC*, Nos. 1:14CV00031, 1:14CV00032, 1:14CV00034, 2014 WL

4104792 (W.D. Va. Aug. 19, 2014), where they were voluntarily nonsuited pursuant to Va. Code Ann. § 8.01-380.[1]

In March and April 2015, the plaintiffs in these nonsuited actions filed three new, but essentially identical civil actions against Bizzack in the state court, where they remain pending.[2]  The present action arises from these underlying Coal Removal Suits.  The underlying plaintiffs allege that Bizzack illegally removed and sold their coal and "damaged the remaining coal in place on the [property]." Underlying Compl. 5-6, Ex. C, ECF No. 1-4.[3]  They raise state law claims for trespass, conversion, assumpsit, gross negligence, conspiracy, and fraud.  *Id.* at 6-13; see also Compl. ¶ 50, ECF No. 1.

At the time the underlying Coal Removal Suits were filed, Bizzack was insured by Liberty Mutual under commercial liability policies (the "CGL

---

[1]  I declined to remand the fourth action, *Fowler v. Bizzack, Inc.*, No. 1:14CV00033, 2014 WL 4385775 (W.D. Va. Sept. 4, 2014), but I stayed proceedings in that case pending the resolution of the other three cases in state court.  The case was subsequently resolved by settlement.

[2]  See *Town of Grundy Indus. Dev. Auth. v. Bizzack Constr., LLC*, No. 203-15; *Grundy Nat'l Bank v. Bizzack Constr., LLC*, No. 204-15; *Williams v. Bizzack Constr., LLC*, No. 212-15.  I refer to these cases collectively as the "Coal Removal Suits."  These cases are apparently still at a preliminary stage in state court.

[3]  The underlying Complaints in the Coal Removal Suits are virtually identical.  Thus, for the sake of simplicity, I will cite only to the Complaint in *Town of Grundy Industrial Development Authority* ("Underlying Compl.").  The plaintiffs in the Coal Removal Suits are also defendants in the present case, but they have taken no position on the pending motions and have not briefed or argued the coverage issues.

Policies") and commercial liability umbrella policies (the "Umbrella Policies") (collectively, the "Policies"). See Compl. ¶¶ 15-40, ECF No. 1; Pls.' Mem. Supp. Summ. J. 2-3, ECF No. 34; *id.*, Exs. 1-4, ECF Nos. 34-1 to 34-4.[4] Under the Policies, Liberty Mutual has a duty to defend and indemnify Bizzack in any suit seeking damages for "property damage" caused by an "occurrence," subject to certain exclusions. Compl. ¶¶ 18, 24, ECF No. 1.

In this action, the plaintiff Liberty Mutual seeks a declaration that under the Policies it has neither a duty to defend nor a duty to indemnify Bizzack in the underlying Coal Removal Suits. Bizzack has filed a Counterclaim seeking a contrary declaration that Liberty Mutual does have both a duty to defend and a duty to indemnify Bizzack.[5]

The parties have now filed cross-motions for summary judgment, which have been fully briefed and orally argued. Liberty Mutual seeks summary judgment on the grounds that there is no coverage under the Policies based upon the allegations of the Coal Removal Suits because (1) there was no defined "occurrence"; (2) there was no defined "property damage"; (3) the so-called "j(5)"

---

[4] There were four separate annual policies — two CGL Policies and two Umbrella Policies — covering from April 2011 to April 2013, and no distinction will be made herein between the annual policies.

[5] Subject-matter jurisdiction of this court exists pursuant to diversity of citizenship and amount in controversy. 28 U.S.C. § 1332(a). The declaratory judgment remedy sought is afforded by 28 U.S.C. § 2201.

exclusion from coverage applies; and (4) the "expected or intended injury" exclusion applies. Pls.' Mem. Supp. Summ. J. 15-28, ECF No. 34; Pls.' Mem. Opp. Defs.' Summ. J. 4-17, ECF No. 38. Bizzack seeks partial summary judgment solely as to the question of Liberty Mutual's duty to defend. Bizzack also argues that summary judgment is premature as to Liberty Mutual's duty to indemnify on the ground that this question cannot be resolved until certain operative facts have been determined through the resolution of the Coal Removal Suits. Defs.' Mem. Supp. Summ. J. 2, ECF No. 37.

For the reasons stated below, I will deny Liberty Mutual's Motion for Summary Judgment and will grant Bizzack's Motion for Partial Summary Judgment as to Liberty Mutual's duty to defend.

## II. Applicable Law.

Federal Rule of Civil Procedure 56(a) requires a court to grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on cross-motions for summary judgment, the court must, "[w]ith respect to each side's motion . . . view the facts and all justifiable inferences arising therefrom in the light most favorable to the nonmoving party."

*Kolbe v. Hogan*, 849 F.3d 114, 130 (4th Cir. 2017).[6]  The party seeking summary judgment bears "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).  However, the party opposing summary judgment must nevertheless "properly address [the movant]'s assertion of fact" in order to proceed to trial.  Fed. R. Civ. P. 56(e).

Because this is a diversity case, Virginia substantive law, including Virginia choice-of-law rules, applies.  *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005) ("A federal court hearing a diversity claim must apply the choice-of-law rules of the state in which it sits.").  In Virginia, "the law of the place where an insurance contract is written and delivered controls issues as to its coverage." *Buchanan v. Doe*, 431 S.E.2d 289, 291 (Va. 1993).  It is undisputed that the Policies were delivered to Bizzack in Kentucky.  The parties accordingly agree that Kentucky substantive law controls this case.  Hr'g Tr. 3:2-4, Apr. 6, 2017, ECF No. 44.

In Kentucky, "the construction and legal effect of an insurance contract is a matter of law for the court." *Bituminous Cas. Corp. v. Kenway Contracting, Inc.*, 240 S.W.3d 633, 638 (Ky. 2007).  Where a policy is ambiguous, it must be "liberally construed so as to resolve all doubts in favor of the insured." *Id.* (citing *Wolford v. Wolford*, 662 S.W.2d 835, 838 (Ky. 1984)).  By contrast, "[w]here not

---

[6]  I have omitted internal quotation marks, alterations, and citations throughout this opinion, unless otherwise noted.

ambiguous, the ordinary meaning of the words . . . is to be followed." *Id.* (quoting *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991)). In addition, because the purpose of commercial general liability insurance is to "provide broad comprehensive insurance . . . all risks not expressly excluded . . . are covered, including those not contemplated by either party." *Id.* "The insurer has a duty to defend if there is any allegation which potentially, possibly or might come within the coverage of the policy." *Brown Found.*, 814 S.W.2d at 279. "[O]nly an unequivocal, conspicuous and plain and clear manifestation of the company's intent to exclude coverage will defeat this expectation." *Bituminous Cas. Corp.*, 240 S.W.3d at 638.

## III. DISCUSSION.

The parties raise four issues regarding Bizzack's coverage under the Policies, all of which are potentially dispositive of the motions for summary judgment.

### A. "Occurrence."

The Policies afford coverage for "property damage" caused by an "occurrence." Compl. ¶ 18, ECF No. 1. Liberty Mutual contends that the underlying Coal Removal Suits do not allege an "occurrence." Pls.' Mem. Supp. Summ. J. 15, ECF No. 34. Bizzack disagrees, asserting that the underlying suits

do allege an "occurrence" as that term is defined in the Policies. Defs.' Mem. Supp. Summ. J. 9-10, ECF No. 37.

The Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Compl. ¶ 22, ECF No. 1. They do not, however, define the term "accident," nor does the term have a "technical meaning in the realm of insurance law." *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 74 (Ky. 2010). Because the term is undefined and I do not find it to be ambiguous under these facts, I must "accord the term 'accident' its plain meaning." *Id.*; *see also Bituminous Cas. Corp.*, 240 S.W.3d at 638 (stating that "words which have no technical meaning in law, must be interpreted in light of the usage and understanding of the common man").

The Kentucky Supreme Court has noted that the "doctrine of fortuity" is "[i]nherent in the plain meaning of 'accident'" and that the doctrine "consists of two central aspects: intent . . . and control." *Cincinnati Ins. Co.*, 306 S.W.3d at 74. Thus, "a loss or harm is not fortuitous if the loss or harm is caused intentionally by the insured." *Id.* Likewise, an accident must be a "chance event" and not the result of a "plan" or "design" on the part of the insured. *Id.* at 76.

Liberty Mutual asserts that the fortuity doctrine as articulated in *Cincinnati Insurance* applies in this case to compel the conclusion that Bizzack's alleged actions do not constitute an "accident" and, therefore, do not constitute a covered

"occurrence" under the Policies. Pls.' Mem. Supp. Summ. J. 15-19, ECF No. 34.
In support of this assertion, it points to the Complaints in the underlying Coal
Removal Suits, which "allege that Bizzack's actions . . . were purposeful,
intentional, wanton, willful, deliberate, and malicious." *Id.* at 17. Liberty Mutual
also argues, like the defendants in *Cincinnati Insurance*, that Bizzack had control
over the event that caused the alleged harm. Bizzack contends, by contrast, that
the fortuity doctrine as articulated in *Cincinnati Insurance* is limited to cases
involving faulty workmanship, a claim that is not alleged in the underlying Coal
Removal Suits. Defs.' Reply Mem. Opp. Summ. J. 1-3, ECF No. 42. Moreover, it
argues, the fact that the underlying Complaints allege that Bizzack acted
negligently, in addition to intentionally, requires the conclusion that the underlying
Complaints allege an "accident" and, therefore, an "occurrence." *Id.* at 3-5.

I agree with Liberty Mutual that the fortuity doctrine applies here. The
Supreme Court of Kentucky made it clear that the doctrine of fortuity is "[i]nherent
in the plain meaning of [the term] 'accident.'" *Cincinnati Ins. Co.*, 306 S.W.3d at
74. In determining whether an alleged harm constitutes an accident, a court must
therefore assess both whether the insured intended the harm as well as whether the
harm resulted from a "plan" or "design" of the insured. *Id.* at 76. This is true
regardless of whether the underlying action alleges faulty workmanship. *See, e.g.*,
*Cincinnati Ins. Co. v. Richie Enters., LLC*, No. 1:12-CV-00186-JHM-HBB, 2014

WL 838768, at *4-7 (W.D. Ky. Mar. 4, 2014) (considering both intent and control aspects of fortuity doctrine even where underlying case did not allege faulty workmanship); *Westfield Ins. Co. v. B.H. Green & Son, Inc.*, No. 5:11-CV-00010-R, 2013 WL 5278243, at *3 (W.D. Ky. Sept. 18, 2013) (same).

However, I do not believe that application of the doctrine compels the conclusion that the Coal Removal Suits do not allege an accident. In deciding *Cincinnati Insurance*, the Supreme Court of Kentucky made it clear that its holding was limited to the "narrow issue" of "whether a claim of faulty construction may qualify as an 'occurrence.'" *Cincinnati Ins. Co.*, 306 S.W.3d at 77. Thus, where the underlying suit does not allege faulty workmanship, *Cincinnati Insurance* does not control. It is obvious, reading the Complaints in the Coal Removal Suits, that the underlying plaintiffs do not allege faulty workmanship. I therefore find that, although this case is governed by the fortuity doctrine articulated in *Cincinnati Insurance*, its outcome is not dictated by the holding in that case.

Applying the fortuity doctrine here, I conclude that the actions alleged in the underlying Coal Removal Suits do constitute an "accident" and, thus, an "occurrence" under the Policies. The doctrine encompasses both intent and control, and I consider each aspect in turn.

"[A] loss or harm is not fortuitous if the loss or harm is caused intentionally by the insured." *Id.* at 74. Liberty Mutual asserts that because the Coal Removal

Suits allege that Bizzack acted intentionally, and because "one cannot intend to commit an accident," *id.* at 76, the Coal Removal Suits necessarily fail to allege an accident. I disagree. Although the Coal Removal Suits do allege that Bizzack acted intentionally, they also allege, in the alternative, that Bizzack acted negligently. See Underlying Compl. 9-10, Ex. C, ECF No. 1-4 (raising a claim for gross negligence). The fact that the claims for negligence purport to incorporate the preceding allegations of intentional conduct, see *id.* at 9, is of no moment. At trial, the underlying plaintiffs could prevail on their negligence claims without adducing any evidence of intent; it would therefore defy common sense to conclude that the allegations of negligence constitute allegations of intentional harm.[7] Indeed, an allegation that Bizzack caused harm through its negligence is equivalent to an allegation that Bizzack did *not* intentionally cause the alleged harm. *See Richie Enters., LLC*, 2014 WL 838768, at *5 (finding that allegations of harm based on negligence "can properly be deemed 'fortuitous,' an 'accident,' and an 'occurrence'" even when raised alongside allegations of intentional harm).

---

[7] The Coal Removal Suits also assert claims for intentional trespass. Bizzack notes that, under Virginia law, a "plaintiff who alleges intentional trespass may still recover if the facts as adduced at trial support a finding of negligent trespass." Defs.' Mem. Supp. Summ. J. 11, ECF No. 37. As a result, Bizzack argues, "the trial of [the Coal Removal Suits] potentially, possibly or might result in a finding of negligent trespass," and thus, the underlying claims should fall within the coverage of the Policies. *Id.* at 12. Because I find that the gross negligence claim alleged in the Coal Removal Suits constitutes an "occurrence" that triggers Liberty Mutual's duty to defend, I need not address the question of whether an allegation of intentional trespass necessarily constitutes an allegation of negligent trespass in the context of insurance law.

I must also determine whether the Coal Removal Suits allege harm that was within Bizzack's control. On this question, I find the *Cincinnati Insurance* court's direct comparison of the facts of that case to the facts of *Bituminous Casualty* to be instructive. *Cincinnati Insurance* involved a claim of faulty workmanship: the insured builder allegedly constructed a house that was "so poorly built that it was beyond repair and needed to be razed." 306 S.W.3d at 71. By contrast, *Bituminous Casualty* involved a claim of improper demolition: the insured contractor mistakenly demolished part of a residence along with a carport when it was supposed to demolish only the carport. 240 S.W.3d at 636. As the *Cincinnati Insurance* court explained, "the quick destruction of a residence is manifestly a completely different undertaking than the protracted improper construction of a residence." *Cincinnati Ins. Co.*, 306 S.W.3d at 77.

Here, the Coal Removal Suits allege "property damage" in the form of damage to coal remaining in the ground. See *infra* at III.B. Damage to coal in the course of highway construction is far more analogous to the "quick destruction" of the house in *Bituminous Casualty* than to the "protracted improper construction" of the house of *Cincinnati Insurance*. Here, as in *Bituminous Casualty*, the harm is alleged to be accidental collateral damage. In *Cincinnati Insurance*, by contrast, the harm was due to poor construction of the contracted project itself.

Moreover, the court's finding of coverage in *Cincinnati Insurance* "hinged on the fact that the subcontractors' defective workmanship was both observable and controllable by the insured party throughout construction." *Westfield Ins. Co.*, 2013 WL 5278243, at *4. By contrast, Bizzack's actions were undertaken in accordance with VDOT's 460 Bypass Project. The Coal Removal Suits allege that Bizzack's actions were done "in concert with VDOT," Underlying Compl. 6, Ex. C, ECF No. 1-4, and the letter sent to the Coal Removal Suits plaintiffs by VDOT indicates that "it was necessary to remove certain coal" as part of the project. *Id.* at 14. There is a fundamental difference between *Cincinnati Insurance*, in which the insured constructed a faulty house in accordance with its own design, and this case, in which it is alleged that the insured committed collateral damage in the course of highway construction in accordance with VDOT's instructions. *Cf. Westfield Ins. Co.*, 2013 WL 5278243, at *4-5 (finding that insured did not have control over certain aspects of building a school where it performed in accordance with the Board of Education's standards).

I also find persuasive Bizzack's argument that an emphasis on the control aspect of the fortuity doctrine, beyond the context of faulty workmanship, would mean that "the insured [would] never ha[ve] coverage if he was in control of the situation . . . the only thing that[ ] [would be] covered is an act of God." Hr'g Tr. 20:9-11, Apr. 6, 2017, ECF No. 44. As counsel noted at oral argument, an

emphasis on the insured's control over the situation "makes sense" in a faulty workmanship cause "because it is [his] workmanship, it is [his] product that is being produced, and [he] . . . ha[s] control over that." *Id.* at 20:14-16. In a case involving other types of damage, however, the insured does not "have control when something occurs that causes damage to collateral property." *Id.* at 20:16-18.

This position finds support in *Cincinnati Insurance* as well. In stating that control is an inherent aspect of fortuity, the court explains that "an accident . . . is something that does not result from a plan, design, or . . . intent on the part of the insured." 306 S.W.3d at 76. It had applied this standard in *Bituminous Casualty*, the court noted, and in that case concluded that the insured's improper demolition was an accident. *Id.* at 77. Liberty Mutual seems to argue that because Bizzack was in control of its actions when it removed the coal, any resulting damage cannot be termed an accident. See Pls.' Mem. Supp. Summ. J. 17-18, ECF No. 34. Under this interpretation of the doctrine, however, *Bituminous Casualty* would not have involved an accident, since the insured's act of demolishing the house was an act within its control. This is obviously inconsistent with the holding of that case, which *Cincinnati Insurance* did not purport to overrule. I therefore do not believe it is appropriate to extrapolate the holding of *Cincinnati Insurance* to find that the Coal Removal Suits fail to allege an "accident" in this case. Thus, I conclude that

the Coal Removal Suits do allege an "occurrence" as that term is defined in the Policies.

## B. "Property Damage."

Under the Policies, Liberty Mutual has a duty to defend Bizzack in suits seeking damages for "property damage" caused by an "occurrence." Compl. ¶ 18, ECF No. 1. The Policies define "property damage" as "physical injury to tangible property, including all resulting loss of use of that property." Compl. ¶ 19, ECF No. 1. The underlying Complaints allege that Bizzack's actions have "damaged the remaining coal in place on the [plaintiffs'] . . . [p]roperty making it less likely that it will ever be mined." Underlying Compl. 6, Ex. C, ECF No. 1-4.

In its initial briefing, Liberty Mutual argued, without mentioning this particular allegation, that the underlying Coal Removal Suits do not allege "property damage" as that term is defined in the Policies. Pls.' Mem. Supp. Summ. J. 20-23, ECF No. 34. However, it abandoned this argument in later briefings. At oral argument, counsel for Liberty Mutual stated, "without conceding the point," that he would not attempt to argue that damage to the coal remaining in place would not constitute property damage under the Policies. Hr'g Tr. 5:2-4, Apr. 6, 2017, ECF No. 44.

An allegation that Bizzack damaged the underlying plaintiffs' coal is obviously an allegation of physical injury to tangible property. Thus, I conclude

that the Coal Removal Suits do allege "property damage" as that term is defined in the Policies.

Because the underlying Coal Removal Suits allege "property damage" caused by an "occurrence," there is at this point coverage under the Policies unless one or more exclusions apply. Liberty Mutual argues that two exclusions apply: the "j(5)" exclusion and the "expected or intended" exclusion. I address each exclusion in turn.

## C. "J(5)" Exclusion.

The Policies exclude from coverage any "property damage" to "[t]hat particular part of real property on which [the insured] . . . [is] performing operations, if the 'property damage' arises out of those operations." Compl. ¶ 24, ECF No. 1. This exclusion is commonly referred to as the "j(5)" exclusion.[8] Liberty Mutual asserts that the j(5) exclusion applies in this case because the alleged damage "took place during Bizzack's performance of excavation work on the 460 By-Pass Project" and, therefore, any damage was to a "particular part of real property" on which Bizzack was "performing operations" and the alleged damage "[arose] out of such operations." Pls.' Mem. Supp. Summ. J. 24, ECF No. 34. Bizzack, on the other hand, contends that the j(5) exclusion does not apply

---

[8] The exclusion is located in subsection j(5) of the CGL Policies and subsection l(5) of the Umbrella Policies. For the sake of convenience, the parties refer to the exclusion as the "j(5) exclusion."

because the underlying Complaints are drafted such that they could be alleging damage to property *outside* the bounds of the 460 Bypass Project, which is not real property on which Bizzack was performing operations for the project.[9]  Defs.' Mem. Supp. Summ. J. 13, ECF No. 37.

The question of whether an insurance policy is ambiguous is a question of law for the court.  *Bituminous Cas. Corp.*, 240 S.W.3d at 638.  A policy is ambiguous when it is "susceptible to two (2) or more reasonable interpretations." *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003).  Where an insurance policy is ambiguous, Kentucky applies a rule of interpretation called the "reasonable expectation doctrine," which "resolves an insurance-policy ambiguity in favor of the insured's reasonable expectation."  *Id.*  Under the doctrine, "an ambiguous policy is to be construed against the drafter."  *Bituminous Cas. Corp.*, 240 S.W.3d at 641; *see also Wolford*, 662 S.W.2d at 838 (noting that an ambiguous policy "must be liberally construed to resolve any doubts in favor of the insured"); *Simon v. Cont'l Ins. Co.*, 724 S.W.2d 210, 212-13 (Ky. 1986) (similar).

---

[9]  Bizzack also asserts that the j(5) exclusion does not apply because there is no privity of contract between Bizzack and the Coal Removal Suits plaintiffs.  It argues that the j(5) exclusion is "not intended to apply to claims by third parties, but only to claims by the entity with which the insured . . . had expressly contracted."  Defs.' Mem. Supp. Summ. J. 12-13, ECF No. 37.  Liberty Mutual contests this interpretation.  However, at oral argument, counsel for Bizzack "abandon[ed] the privity issue."  Hr'g Tr. 32:2-3, Apr. 6, 2017, ECF No. 44.  In light of this representation, and because I find that the j(5) exclusion does not apply in any event, I need not address the question of whether the j(5) exclusion excludes coverage for claims by third parties.

I conclude that the j(5) exclusion is ambiguous. The meaning of the phrase "real property on which [the insured] . . . [is] performing operations" is subject to more than one reasonable interpretation. Bizzack suggests that the provision encompasses only real property on which Bizzack was contracted to perform operations — that is, only real property falling within the bounds of the 460 Bypass Project. Defs.' Mem. Supp. Summ. J. 13, ECF No. 37. However, the provision could also be reasonably interpreted to encompass any real property on which Bizzack actually operated, regardless of whether that property falls within or outside the bounds of the project. *See, e.g., Bituminous Cas. Corp.*, 240 S.W.3d at 641 (similar interpretation advanced by insurance company). Given that the policy does not specify the meaning of the term "performing operations," and given that there are at least two reasonable interpretations in light of the plain meaning of the words used, I conclude the policy is ambiguous. *See Id.* (reaching same conclusion regarding identical exclusion). Because an "ambiguous policy is to be construed against the drafter," *id.* at 641, and "in favor of the insured," *Wolford*, 662 S.W.2d at 838, I conclude that the j(5) exclusion must be accorded the interpretation advanced by Bizzack: the exclusion applies only to damage to real property within the bounds of the 460 Bypass Project.

Liberty Mutual contends that the provision is not ambiguous under these facts because the underlying Coal Removal Suits "make it clear that Bizzack's

removal of coal was from land on which it was supposed to have been working." Pls.' Mem. Supp. Summ. J. 24-25, ECF No. 34. However, after carefully considering the language of the underlying Complaints, I disagree.

The underlying Complaints allege that the plaintiffs own coal interests "located . . . in, *around*, and under . . . the '460 By-Pass Project'." Underlying Compl. 3, Ex. C, ECF No. 1-4 (emphasis added). They further allege that Bizzack's actions "damaged the remaining coal in place on the Subject Property" owned by the plaintiffs. *Id.* at 6. These allegations, taken together, give rise to the possibility that the alleged damage occurred outside the bounds of the 460 Bypass Project. See Defs.' Mem. Supp. Summ. J. 13, ECF No. 37. It is certainly possible, given the language of the Complaints, that the damaged coal is located on the plaintiffs' properties within the bounds of the 460 Bypass Project. However, it is equally possible that the damaged coal is located on the portions of the plaintiffs' properties that fall outside the bounds of the 460 Bypass Project. The precise location of the damaged coal — that is, whether it falls within or outside the boundaries of the 460 Bypass Project — cannot be ascertained from the allegations of the underlying Complaints.

As the insurer, Liberty Mutual has the burden of proving the applicability of the j(5) exclusion. *See Pasha v. Commonwealth Land Title Ins. Co.*, No. 2013-CA-000848-MR, 2014 WL 5510931, at *3 (Ky. Ct. App. Oct. 31, 2014) (unpublished)

(noting that "[t]he burden is on the insurer to establish that an exclusion bars coverage"); *Ky. Sch. Bds. Ins. Tr. v. Bd. of Educ. of Woodford Cty.*, No. 2002-CA-001748-MR, 2003 WL 22520018, at *9 (Ky. Ct. App. Nov. 7, 2003) (unpublished) (noting that "an insurer who disclaims its duty to defend based on a policy exclusion bears the burden of proving the applicability of the exclusion"); *Inter-Ocean Ins. Co. v. Engler*, 632 S.W.2d 459, 461 (Ky. Ct. App. 1982) (holding that health insurance provider has burden of proving that exclusion applies); *N.H. Fire Ins. Co. v. Rupard*, 220 S.W. 538, 542 (Ky. Ct. App. 1920) (holding that fire insurance provider has burden of proving that exclusion applies); *Martin Cty. Coal Corp. v. Universal Underwriters Ins. Servs., Inc.*, No. 08-93-ART, 2010 WL 55926, at *3 (E.D. Ky. Jan. 4, 2010) (same). Because it is impossible to tell from the Complaints of the Coal Removal Suits whether the damaged coal lies within or outside the bounds of the 460 Bypass Project, and because the j(5) exclusion applies only if the damaged coal lies within the bounds of the 460 Bypass Project, there is presently a genuine dispute of material fact as to whether the j(5) exclusion applies. I therefore must deny Liberty Mutual's Motion for Summary Judgment on the j(5) exclusion ground, subject to future resolution of the factual dispute. *See Brown Found.*, 814 S.W.2d at 276 (stating that "[t]he burden on an insurer is to demonstrate the absence of a genuine issue of material fact and any doubts about the propriety of summary judgment are to be resolved against the insurer").

Bizzack, on the other hand, has only the burden of showing that the underlying "allegation[s] . . . potentially, possibly or might come within the coverage of the policy." *Id.* at 279. In other words, Bizzack, as the insured, need not prove that the j(5) exclusion does not apply — it need only prove that it *might* not apply. Because the exclusion will not apply if the damaged coal lies outside the bounds of the 460 Bypass Project — a scenario that is entirely possible, given the underlying Complaints — there is no doubt that the exclusion might not apply and that the underlying allegations might be covered by the insurance policy.

Accordingly, the j(5) exclusion does not preclude Liberty Mutual's duty to defend Bizzack in the Coal Removal Suits, and I deny Liberty Mutual's Motion for Summary Judgment as to the duty to defend. I also deny Liberty Mutual's Motion for Summary Judgment on this ground as to the duty to indemnify, but I do so without prejudice to the later presentation of evidence as to the factual issue involving the j(5) exclusion.

D. "Expected or Intended" Exclusion.

Finally, the CGL Policies excludes from coverage "property damage" that was "expected or intended from the standpoint of the insured."[10] Compl. ¶ 24,

---

[10] The Umbrella Policies, by contrast, exclude from coverage "'property damage' arising out of an act that: (1) Is intended by the insured; or (2) Would be expected *from the standpoint of a reasonable person* in the circumstances of the insured to cause . . . 'property damage.'" Compl. ¶ 37, ECF No. 1 (emphasis added). However, the Umbrella Policies address only Liberty Mutual's duty to indemnify Bizzack to the extent that

ECF No. 1. This exclusion is commonly referred to as the "expected or intended" exclusion. Liberty Mutual asserts that the "expected or intended" exclusion applies in this case because "[t]he Coal Removal Suits allege that Bizzack 'secretly, intentionally, recklessly, willfully and wantonly' removed and sold the coal . . . and that Bizzack's actions were done 'for the purpose of willfully and maliciously injuring' the Underlying Plaintiffs." Pls.' Mem. Supp. Summ. J. 26, ECF No. 34. "These allegations," Liberty Mutual contends, "demonstrate that Bizzack's alleged conduct included that it expected or intended the . . . injury on which the Underlying Plaintiffs base their claims." *Id.* at 27. Bizzack, by contrast, asserts that the exclusion does not apply because "the underlying complaints expressly allege negligence" and, thus, the "allegations potentially, possibly, or might come within the policy's coverage." Defs.' Mem. Supp. Summ. J. 9, 11, ECF No. 37 (emphasis omitted).

I find that the "expected or intended" exclusion does not apply for the same reason I found that there was an "occurrence," that is, because the underlying Complaints allege negligence. See *supra* at III.A. The exclusion states that the damage must have been "expected or intended *from the standpoint of the insured*."

---

Bizzack becomes liable for amounts in excess of its CGL Policies limits. Thus, even if the Umbrella Policies' version of the "expected or intended" exclusion applies — a question I do not address here — it would not operate to exclude the underlying Coal Removal Suits from coverage under the CGL Policies and, thus, would not operate to relieve Liberty Mutual of its duty to defend Bizzack under the CGL Policies.

CGL Policy 17, Ex. A, ECF No. 1-2 (emphasis added). This means that the exclusion applies only if Bizzack specifically and subjectively expected or intended for its actions to damage the underlying plaintiffs' coal. *See Brown Found.*, 814 S.W.2d at 278 (interpreting identical language as such, where language was included as an exception to the definition of "occurrence" rather than as a separate exclusion). The Coal Removal Suits allege that Bizzack damaged the coal merely because it negligently breached its "duty to use reasonable care in conducting its operations." Underlying Compl. 10, Ex. C, ECF No. 1-4. By alleging that Bizzack was negligent, the underlying suits necessarily fail to allege that Bizzack actually and subjectively expected or intended for its actions to damage the underlying plaintiffs' coal. Accordingly, the "expected or intended" exclusion does not preclude Liberty Mutual's duty to defend Bizzack in the Coal Removal Suits, and I deny Liberty Mutual's Motion for Summary Judgment as to the duty to defend.

### E. Duty to Indemnify.

Liberty Mutual asserts that it has no duty to indemnify Bizzack in the event the underlying plaintiffs prevail in the Coal Removal Suits for the same reasons it has no duty to defend Bizzack in the underlying suits. See generally Pls.' Mem. Supp. Summ. J., ECF No. 34. Bizzack, however, contends that the question of Liberty Mutual's duty to indemnify is not yet ripe because, unlike an insurer's duty

to defend, which "a court should determine . . . at the outset of litigation," a duty to indemnify "typically only arises upon the conclusion of the underlying case[s]." Defs.' Mem. Supp. Summ. J. 7, ECF No. 37 (citing *Westfield Ins. Co. v. Tech Dry. Inc.*, 336 F.3d 503, 507 (6th Cir. 2003) (construing Kentucky law).

I find that Liberty Mutual does have a duty to defend Bizzack in the underlying Coal Removal Suits, and the question of whether it also has a duty to indemnify is properly deferred. Summary judgment on this question at this point is therefore premature.

## IV. CONCLUSION.

An "insurer has a duty to defend if there is any allegation which *potentially*, *possibly* or *might* come within the coverage of the policy." *Brown Found.*, 814 S.W.2d at 279 (emphasis added). I find that the underlying Coal Removal Suits (1) allege an "occurrence" and (2) allege "property damage," as those terms are defined in the Policies. Thus, Bizzack is entitled to summary judgment on the question of Liberty Mutual's duty to defend unless Liberty Mutual, as the insurer, can show that one or more policy exclusions apply. However, I find, based upon the allegations of the Coal Removal Suits, that (1) there is a material factual dispute as to whether the "j(5)" exclusion applies and (2) the "expected or intended" exclusion does not apply. I therefore grant Bizzack's Motion for Partial Summary Judgment and I deny Liberty Mutual's Motion for Summary Judgment

as to the question of its duty to defend.  I also deny Liberty Mutual's motion as to the question of its duty to indemnify, but without prejudice to the later presentation of evidence.

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment, ECF No. 33, is DENIED; Bizzack Construction, LLC's, Bizzack, Inc.'s, and Brett Cool's Motion for Partial Summary Judgment, ECF No. 36, is GRANTED; and the court declares that Liberty Mutual has a duty to defend the insureds in the Coal Removal Suits.

It is so **ORDERED**.

ENTER:  April 27, 2017

/s/  James P. Jones
United States District Judge